Sabita J. Soneji (SBN 224262)
Annick Persinger (SBN 272996)
Tanya Koshy (SBN 277095)
**TYCKO & ZAVAREEI LLP**
483 Ninth St., Suite 200
Oakland, CA 94607
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
Email: ssoneji@tzlegal.com
         apersinger@tzlegal.com
         tkoshy@tzlegal.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VELMA SERINA RANKINS, individually and on behalf of all others similarly situated, | Case No. 18-5350 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| FACEBOOK, INC., | |
| Defendant. | |

Plaintiff VELMA SERINA RANKINS ("Plaintiff"), through her undersigned attorneys, on behalf of herself and all persons similarly situated, brings this complaint against Defendant Facebook, Inc. ("Facebook" or "Defendant"). Plaintiff makes the following allegations based on personal knowledge and the investigation of her counsel.

## INTRODUCTION

1.      Facebook shares its users' personal data with third-party mobile device makers ("third-party device makers" or "device makers"), including Apple, Amazon, and Samsung, without the users' consent and despite its promises that it does not share its users' personal information without either providing notice or obtaining users' permission. Specifically, backdoor data-sharing partnerships between Facebook and device makers have enabled device makers to obtain substantial information, including users' relationship status, religion, and information about users' friends—even where those users have denied Facebook permission to share data with any third parties. Indeed, in June 2018, the New York Times reported that Facebook entered into data-sharing partnerships with nearly 60 device makers. For years prior to the New York Times report, Facebook did not disclose to its users that these data-sharing partnerships with device makers existed. Facebook's data-sharing partnerships as alleged herein have violated the privacy of millions of people.

2.      Because Facebook systematically and covertly shared users' data with dozens of device makers without Plaintiff's and Class members' consent or even knowledge, Plaintiff brings this class action on behalf of herself and similarly situated Facebook users.

3.      Facebook is a data aggregation and marketing company disguised as a social networking platform. Facebook's surface-level social networking platform facilitates the sharing of information, photographs, website links, and videos among friends, family, and coworkers. As Facebook explains, "[p]eople use Facebook to stay connected with friends and family, to discover what's going on in the world, and to share and express what matters to them."[1] By the end of 2017, Facebook had more than 2.2 billion active users. Facebook users are supposed to have the ability to share and restrict information based on their own specific criteria. In fact, however, Facebook shares users' personal

---

[1] Company Info, Facebook, Inc., *available at* https://newsroom.fb.com/company-info/ (last visited August 30, 2018).

information through backdoor data-sharing partnerships with device makers, including Apple, Samsung, and Amazon.

4.     To encourage use of its social networking platform, which it uses to aggregate and market personal data, Facebook provides multiple mechanisms through which users may access its social media product. These include, but are not limited to, a website accessed through a computer or mobile device's web browser and auxiliary applications such as Facebook, Facebook Messenger, and Facebook Lite created for mobile devices.

5.     Facebook leads its consumers to believe that their information is being kept private. Facebook provides privacy settings that purport to limit the sharing of personal information. Facebook also requires the use of a login and password. These purported privacy protections, and the fact that Facebook did not disclose that data is freely shared with device makers, leads reasonable consumers to believe that their information is secure, when, in fact, Facebook has been knowingly funneling data to device makers through data partnerships for years.

6.     To make matters worse, Facebook falsely represented to users, and the Federal Trade Commission ("FTC"), that it would not share users' data without their informed consent. Despite this promise, Facebook continues to improperly and illegally share—and profit from—its users' data.

7.     The data-sharing partnerships at issue are not the only example of Facebook's data aggregation and for-profit information-sharing scheme. The New York Times' report revealing these data-sharing partnerships came on the heels of the revelation that tens of millions of Facebook users' data was shared without users' consent by an academic researcher working with Cambridge Analytica, a political consulting firm. Cambridge Analytica used the data to influence voters, including those who voted in the 2016 United States presidential election. Facebook's lax handling of that data breach alarmed users and regulators alike and raises concerns about whether it provides any oversight on its data-sharing partnerships with device makers.

8.     Plaintiff brings this action on behalf of herself to vindicate her rights under the federal Stored Communications Act, 18 U.S.C. §§ 2701, *et seq*. ("SCA"), the California Constitution, and state law. Plaintiff seeks compensatory and statutory damages, and seeks an injunction requiring Facebook to stop sharing users' data with device makers without affirmatively obtaining the consent of those users.

CLASS ACTION COMPLAINT

**PARTIES**

9.      Plaintiff Rankins is a citizen of California, residing in Oakland. Plaintiff joined Facebook on or around January 2008. Plaintiff accessed her account on her laptop computer, tablet computer, and smart phone during the relevant time period. On her Facebook profile, Plaintiff included her relationship status, job history, and religious and political affiliation. Plaintiff also set her privacy settings so that only her Facebook friends could view this information and any posts she included on her profile. Facebook shared Plaintiff's data, which included information she shared regarding her relationship status, job history, and religious and political affiliation, with nearly 60 device makers without Plaintiff's knowledge or consent. Plaintiff did not understand that Facebook would share her data with device makers. Plaintiff suffered damages when she was deprived of control over access to her information and when Facebook unjustly profited from the sharing of her information with device makers. Plaintiff would not have become a Facebook user had she known the truth about Facebook's data-sharing partnerships with device makers, and would have used Facebook in materially different ways. Facebook's statements and omissions regarding its use of user data played a substantial part, and so had been a substantial factor, in Plaintiff's decision to include personal and sensitive information on her account.

10.      Defendant Facebook, Inc. is incorporated in Delaware and its headquarters are located at 1601 Willow Rd., Menlo Park, California 94025.

**JURISDICTION AND VENUE**

11.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and members of the Class are citizens of different states from Defendant.

12.      Venue is proper in this Court under 28 U.S.C. § 1391 because significant events giving rise to this case took place in this District, and because Facebook is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District, does substantial business in this District, and is subject to personal jurisdiction in this District.

13.      Venue is further proper in this Court under Facebook's Terms of Service, which provides: [A]ny claim, cause of action, or dispute . . . that arises out of or relates to these Terms or the

CLASS ACTION COMPLAINT

Facebook Products ("claim") . . . will be resolved exclusively in the U.S. District Court for the Northern District of California . . . and that the laws of the State of California will govern these terms and any claim, without regard to conflict of law provisions.[2]

**FACTUAL ALLEGATIONS**

I.    **Facebook's Surface-Level Social Medial Platform**

14.    On the outside, Facebook is the world's leading online social media and networking platform. Its users create customized profiles that can include personal information such as their name, occupation, interests, relationship status, religious and political affiliations, and educational history. Users can also join groups according to their social interests and political and religious affiliations, and can share articles and photos, where they can tag other Facebook users.

15.    Users can access Facebook from desktop and laptop computers as well as mobile devices, including smart phones, and tablets.

16.    As of March 31, 2018, Facebook has more than 2 billion monthly users.

II.   **Facebook Provides Front Door Locks to Lead Reasonable Users to Believe That Their Personal Data Is Kept Private**

17.    Facebook leads users to believe that their personal data is kept private and that they have control over who can access their data. To create and login to an account, Facebook directs users to set up a login and secret password. Facebook also purports to provide privacy settings so that users can control how and with whom their information is shared. These privacy settings appear to provide users with the ability to restrict sharing of their personal information to specific audiences—*e.g.*, all their friends or a select group of friends. Thus, users are led to believe that they can "lock the door" and prevent third parties' access to their personal information.

18.    Facebook even requires a user to re-enter his or her password to download Facebook's file of the user's own data.[3] This requirement gives the impression that Facebook takes extra precautions to protect users' personal information from third parties.

---

[2] Terms of Service, Facebook, Inc., (Date of Revision: April 19, 2018), *available at* https://www.facebook.com/terms.php (last visited August 30, 2018).
[3] Accessing & Downloading Your Information, *available at* https://www.facebook.com/help/1701730696756992?helpref=hc_global_nav (last visited August 30, 2018).

-5-

19.     But Facebook fails to disclose that it has, for years, shared users' data with nearly 60 third-party device makers, as recently revealed in a New York Times report. The fact that Facebook gives users no notice of these data-sharing partnerships, and the fact that Facebook never obtains users' consent for this data-sharing, contributes to users' reasonable belief that their personal information is kept private. In short, Facebook users have a reasonable expectation in the privacy of information they place on Facebook.

20.     Facebook works hard to encourage users' reasonable belief that their personal information is kept secure. In the many iterations of its data use policy over the years, Facebook represented that it does not share information about users without their permission, or without notice. For example, Facebook states in its November 15, 2013 Revision of its data use policy:

> Your trust is important to us, which is why we don't share information we receive about you with others unless we have: received your permission; given you notice, such as by telling you about it in this policy; or removed your name and any other personally identifying information from it." -Facebook, Inc. [4]

21.     Facebook similarly represents to its users that they "own all of the content and information [they] post on Facebook" and that they "can control how it is shared" through privacy and application settings.[5]

22.     Relying on Facebook's representations, Facebook users include substantial personal and sensitive information in their accounts. On its Accessing & Downloading Your Information page, Facebook lists a wide range of sensitive and personal information that may be found in users' account:

---

[4] Data Use Policy, Facebook, Inc. (Date of Revision: November 15, 2013), *available at* https://web.archive.org/web/20131213055858/https://www.facebook.com/full_data_use_policy (last visited August 30, 2018).
[5] Terms of Service, Facebook, Inc., (Date of Revision: April 19, 2018), *available at* https://www.facebook.com/terms.php (last visited August 30, 2018).

**Table 1: Information you can find by logging into your account**

| What info is available? | What is it? | Where can I find it? |
|---|---|---|
| About Me | Information you added to the **About** section of your timeline like relationships, work, education, where you live and more. It includes any updates or changes you made in the past and what is currently in the **About** section of your timeline. | Activity Log |
| Check-ins | The places you've checked into. | Activity Log |
| Connections | The people who have liked your Page or Place, RSVPed to your event, installed your app or checked in to your advertised place within 24 hours of viewing or clicking on an ad or Sponsored Story. | Activity Log |
| Credit Cards | If you make purchases on Facebook (ex: in apps) and have given Facebook your credit card number. | Account Settings |
| Events | Events you've joined or been invited to. | Activity Log |
| Following | A list of people you follow. | Activity Log |
| Last Location | The last location associated with an update. | Activity Log |
| Likes on Others' Posts | Posts, photos or other content you've liked. | Activity Log |
| Likes on Your Posts from others | Likes on your own posts, photos or other content. | Activity Log |
| Likes on Other Sites | Likes you've made on sites off of Facebook. | Activity Log |
| Linked Accounts | A list of the accounts you've linked to your Facebook account | Account Settings |
| Notes | Any notes you've written and published to your account. | Activity Log |
| Posts by You | Anything you posted to your own timeline, like photos, videos and status updates. | Activity Log |
| Posts by Others | Anything posted to your timeline by someone else, like wall posts or links shared on your timeline by friends. | Activity Log |
| Posts to Others | Anything you posted to someone else's timeline, like photos, videos and status updates. | Activity Log |
| Privacy Settings | Your privacy settings. | Privacy Settings |
| Recent Activities | Actions you've taken and interactions you've recently had. | Activity Log |
| Registration Date | The date you joined Facebook. | Activity Log |
| Removed Friends | People you've removed as friends. | Activity Log |
| Searches | Searches you've made on Facebook. | Activity Log |
| Shares | Content (ex: a news article) you've shared with others on Facebook using the **Share** button or link. | Activity Log |
| Status Updates | Any status updates you've posted. | Activity Log |
| Vanity URL | Your Facebook URL (ex: username or vanity for your account). | Visible in your timeline URL |
| Videos | Videos you've posted to your timeline. | Activity Log |

Accessing & Downloading Your Information, Facebook, Inc.

CLASS ACTION COMPLAINT

23.     Until recently, Facebook did not reveal to its users that it was sharing their data with device makers, including Apple, Amazon, and Samsung. Just before the June 2018 New York Times published its investigative report on these data-sharing partnerships, Facebook updated its data use policy to note specifically that "[d]evices and operating systems providing native versions of Facebook . . . will have access to all information you choose to share with them, including information your friends share with you, so they can provide our core functionality to you."[6] But prior to April 2018, Facebook's many iterations of its data use policy consistently and blatantly failed to mention that Facebook was systematically providing device manufacturers with access to users' personal data.[7]

24.     In other words, Facebook did not give ordinary and reasonably attentive Facebook users, including Plaintiff and Class members, sufficient information to knowingly agree to data-sharing partnerships with device makers, and Plaintiff and Class members would not have agreed to such data-sharing partnerships if they had first been informed of the partnerships in Facebook's data use policy.

25.     Tellingly, Facebook's evolution from a social networking platform to a highly profitable data aggregation and marketing company is reflected in the evolution of Facebook's characterization of its policy on users' data: Prior to September 6, 2011, Facebook called this policy a "Privacy Policy", then on September 6, 2011, changed it to a "Data Use Policy" and, since January 30, 2015, gave it the broader title of "Data Policy."[8]

26.     Because of Facebook's omissions and misrepresentations, Plaintiff and Class members reasonably believed that Facebook was keeping their data private. By requiring Plaintiff and Class

---

[6] Data Policy, Facebook, Inc. (Date of Revision: April 19, 2018), *available at* https://www.facebook.com/policy.php (last visited August 30, 2018).
[7] *See, e.g.*, Data Policy, Facebook, Inc. (Date of Revision: September 29, 2016), *available at* https://web.archive.org/web/20180417210235/https://www.facebook.com/full_data_use_policy (last visited August 30, 2018); Data Use Policy, Facebook, Inc., (Date of Revision: September 23, 2011), *available at* https://web.archive.org/web/20120309124408/https://www.facebook.com/full_data_use_policy (last visited August 30, 2018).
[8] *See, e.g.,* Privacy Policy, Facebook, Inc. (Date of Revision: December 22, 2010), *available at* https://web.archive.org/web/20110901041806/https://www.facebook.com/policy.php (last visited August 30, 2018); Data Use Policy, Facebook, Inc. (Date of Revision: November 15, 2013), *available at* https://web.archive.org/web/20131213055858/https://www.facebook.com/full_data_use_policy (last visited August 30, 2018); Data Policy, Facebook, Inc. (Date of Revision: September 29, 2016), *available at* https://web.archive.org/web/20180417210235/https://www.facebook.com/full_data_use_policy (last visited August 30, 2018).

members to secure their data with a login and password, and by inviting them to maintain privacy settings that purported to limit with whom their data would be shared, Facebook furthered Plaintiff's and Class members' reasonable belief that their data would not be shared with device makers through back door data-sharing partnerships. Thus, Plaintiff and Class members used their various devices freely without suspecting that Facebook was sharing their data with dozens of device makers and profiting off of their personal data. When Facebook shared their data, Facebook violated Plaintiff's and Class members' privacy rights, and committed the violations alleged herein.

## III. Facebook Provides Users' Personal Data with Device Makers Through A Secret Back Door

27. Despite its outward privacy protections and corresponding assurances of privacy, Facebook shares users' personal data with device makers without users' knowledge or consent.

28. Starting in 2007, Facebook entered into data-sharing partnerships with over 60 device makers giving them access to users' data, including information about friends whose privacy settings did not permit Facebook to share their information with third parties. These data-sharing partnerships have enabled device makers to obtain substantial sensitive and personal information, directly from a user as well as from his or her friends.[9]

29. These data-sharing partnerships violate Plaintiff's and the putative Class members' reasonable expectation of privacy. Ashkan Soltani, a research and privacy consultant and the former FTC Chief Technologist, analogizes these partnerships to "having door locks installed, only to find out that the locksmith also gave keys to all of his friends so they can come in and rifle through your stuff without having to ask you for permission."[10]

30. These data-sharing partnerships also violate a 2011 FTC Consent Decree, which required Facebook for a period of twenty years to disclose to its users the categories of user information that will be shared with third parties, the identity and specific categories of those third parties, and that such sharing exceeds the restrictions imposed by the privacy settings in effect for the user.

---

[9] *See* Facebook Gave Device Makers Deep Access to Data on Users and Friends, N. Y. TIMES, Jun. 3, 2018, *available at* https://www.nytimes.com/interactive/2018/06/03/technology/facebook-device-partners-users-friends-data.html (last visited August 30, 2018).
[10] *Id.*

31.     Attempting to downplay the threat these data-sharing partnerships pose, Facebook claims that its "device partners" are "extensions" of itself. [11] Facebook and device makers, however, are not one in the same. Rather, the device makers are third parties, and Facebook users do not expect that their information is being freely shared with such third parties.

32.     Facebook has also claimed that the device makers, now conveniently "extensions" of Facebook itself, were permitted only to use the data shared by Facebook to "recreate Facebook-like experiences" on their devices.[12] But even if Facebook shared this data to "recreate Facebook-like experiences," that does not change the fact that Facebook shared private personal information without users' knowledge or consent. And Facebook's new characterizations of these data-sharing partnerships obscure the reality that the company encourages this "recreat[ion]" of Facebook on devices to earn advertising dollars and grow its data aggregation and marketing scheme. In fact, in 2016 alone, Facebook generated nearly $27 billion in revenue through advertising.[13] And the average American Facebook user generates about $200 a year in revenue to Facebook.[14] Thus, Facebook profoundly benefits from its unlawful data-sharing.

**IV.    Facebook's Sharing of Information with Device Makers Without Users' Knowledge or Consent Is Part of a Repeated Pattern of Violations of Users' Privacy Rights**

33.     Facebook's systematic sharing of users' data with device makers without users' knowledge or consent came to light amidst a backdrop of other recent instances in which Facebook demonstrated a willingness to share users' data despite its continuing promises never to do so.

34.     Sandy Parakilas, a former Facebook Operations manager who led Facebook's efforts to fix privacy issues, observed that Facebook was "a company that prioritized data collection from its

---

[11] *Id.*

[12] Why We Disagree with the New York Times, Facebook Inc., June 3, 2018, *available at* https://newsroom.fb.com/news/2018/06/why-we-disagree-with-the-nyt/(last visited August 30, 2018).

[13] Wibson, How Much is Your Data Worth?, Medium.com, *available at* https://medium.com/wibson/how-much-is-your-data-worth-at-least-240-per-year-likely-much-more-984e250c2ffa (last visited August 30, 2018).

[14] Sam Harnett, Here's How Much You Are Worth To Facebook In Dollars and Cents, *available at* https://www.kqed.org/news/11661387/heres-how-much-you-are-worth-to-facebook-in-dollars-and-cents (last visited August 30, 2018).

users over protecting them from abuse."[15] He warned Facebook executives that its lax approach to data protection risked a major breach and, when asked what kind of control Facebook had over data shared with outside developers, he replied, "Zero. Absolutely none. Once the data left Facebook servers there was not any control, and there was no insight into what was going on."[16]

35.     Facebook's wide sharing of users' data and its lax approach to data protection has led to a series of privacy breaches.

36.     In 2009, the FTC filed a complaint against Facebook for its failure to keep promises it made regarding user privacy.[17]  The FTC complaint described a number of failed promises made by Facebook, including:

1)   In December 2009, Facebook changed its website, without providing notice to users, so that certain information that users designated as private, such as their Friends List, was made public;

2)   Facebook represented to users that they could restrict the sharing of data to limited audiences—for example, restricting data-sharing with "Friends Only"—but their information was still shared with third-party applications used within Facebook's platform, such as games or quizzes, that were installed by users' friends; and

3)   Facebook represented that the third-party applications users installed would only have access to users' data that the applications needed to operate but, in fact, the applications had access to all of the users' data, including data not needed to operate.[18]

37.     In 2011, Facebook entered into a twenty-year Consent Decree with the FTC, described earlier, requiring Facebook "not [to] misrepresent in any manner . . . the extent to which it maintains the privacy or security of covered information, including . . . the extent to which [Facebook] makes or has made covered information accessible to third parties."[19]

---

[15] Sandy Parakilas, *We Can't Trust Facebook to Regulate Itself*, N.Y. TIMES, Nov. 19, 2017, *available at* https://www.nytimes.com/2017/11/19/opinion/facebook-regulation-incentive.html (last visited August 30, 2018).

[16] Paul Lewis, 'Utterly horrifying': ex-Facebook insider says covert data harvesting was routine, THE GUARDIAN, Mar. 20, 2018, *available at* https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas (last visited August 30, 2018).

[17] Federal Trade Commission, Facebook Settles FTC Charges That It Deceived Consumers By Failing to Keep Privacy Promises, *available at* https://www.ftc.gov/news-events/press-releases/2011/11/facebook-settles-ftc-charges-it-deceived-consumers-failing-keep (last visited August 30, 2018).

[18] *Id.*

[19] In the Matter of Facebook, Inc., a corporation, Agreement Containing Consent Order, at Section I, *available at* https://www.ftc.gov/sites/default/files/documents/cases/2011/11/111129facebookagree.pdf (last

-11-

38.     Facebook was also ordered to disclose, prior to any sharing of a user's nonpublic information with any third party, "(1) the categories of nonpublic user information that will be disclosed to such third parties, (2) the identity or specific categories of such third parties, and (3) that such sharing exceeds the restrictions imposed by the privacy setting(s) in effect for the user."[20]

39.     Pursuant to the terms of the FTC Consent Decree, Facebook must also obtain users' affirmative express consent prior to disclosure of their nonpublic information with any third party.[21]

40.     But in violation of the FTC Consent Decree, Facebook has knowingly shared users' data without disclosing to users when it discloses such data, to which third parties, and whether the sharing exceeded the privacy settings of its users.

41.     For example, Facebook has since 2007 permitted third-party application developers to collect data on its users. In 2013, Cambridge University academic Aleksandr Kogan created a Facebook personality test application, which told test-takers that their data would only be collected for academic use.[22]

42.     But Kogan did not use the data purely for academic purposes. He shared tens of millions of raw user profiles with Cambridge Analytica, a political consulting firm, and Cambridge Analytica used the information to target people with ads and fundraising appeals for Republican politicians.[23] Cambridge Analytica obtained personal information not only from 270,000 Facebook users who took Kogan's test but also from the test-takers' Facebook friends, leading to the collection of information on tens of millions of Facebook users.[24]

---

visited August 30, 2018) ("FTC Consent Order"); *see also* Federal Trade Commission, FTC Approves Final Settlement With Facebook, August 10, 2012, https://www.ftc.gov/news-events/press-releases/2012/08/ftc-approves-final-settlement-facebook (last visited August 30, 2018).
[20] FTC Consent Order at Section II.A.
[21] *Id.* at Section II.B.
[22] Carole Cadwalladr and Emma Graham-Harrison, *Revealed: 50 Million Facebook profiles harvested for Cambridge Analytica in Major Data Breach*, THE GUARDIAN, March 17, 2018, *available at* https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election (last visited August 30, 2018).
[23] How Trump Consultants Exploited the Facebook Data of Millions, March 17, 2018, *available at* https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html (last visited August 30, 2018).
[24] *Id.*; Carole Cadwalladr and Emma Graham-Harrison, *Revealed: 50 Million Facebook profiles harvested for Cambridge Analytica in Major Data Breach*, THE GUARDIAN, March 17, 2018, *available at*

43.     Facebook faced widespread criticism for Cambridge Analytica's misuse of user data. Facebook's Chief Executive Officer, Mark Zuckerberg, acknowledged that "We [at Facebook] have a responsibility to protect your data, and if we can't then we don't deserve to serve you."[25] Despite acknowledging its responsibility to protect users' data, Facebook continues to mishandle such data, demonstrating its complete disregard not just for the promises it makes to users in order to lull them into a false sense of security about their personal data, but also for the privacy of the personal data itself.

## CLASS ALLEGATIONS

44.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of herself and as a class action on behalf of the following class:

> All persons in the United States who, from August 30, 2014 to April 19, 2018, had Facebook accounts that utilized Facebook's privacy settings and who accessed those accounts using mobile devices manufactured by device makers who had data-sharing partnerships with Facebook. Excluded from the Class are any entities, including Facebook, and Facebook's officers, agents, and employees. Also excluded from the Class are counsel for Plaintiff, the judge assigned to this action, and any member of the judge's immediate family.

45.     Members of the Class are so numerous that joinder is impracticable. While the exact number of class members is unknown to Plaintiff, it is believed that the Class is comprised of millions of members geographically dispersed throughout the United States. The Class is readily identifiable from information and records in the possession of Facebook and third parties.

46.     Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual class members because Facebook has acted on grounds generally applicable to the Class. Such common and legal factual questions include:

a.     Whether Facebook shared Plaintiff's and Class members' data with device makers;

b.     Whether Facebook omitted that it would share Plaintiff's and Class members' data with device makers;

---

https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election (last visited August 30, 2018).
[25] Mark Zuckerberg, Facebook, Inc., March 21, 2018, *available at* https://www.facebook.com/zuck/posts/10104712037900071 (last visited August 30, 2018).

CLASS ACTION COMPLAINT

c.      Whether Facebook represented that it would not share Plaintiff's and Class members' data with device makers;

d.      Whether Facebook obtained consent from Plaintiff and Class members to share their data with device makers;

e.      Whether Facebook disclosed to Plaintiff and Class members its data-sharing partnerships with device makers;

f.      Whether Plaintiff and Class members reasonably believed based on Facebook's omissions and misrepresentations that Facebook would not share their data with device makers;

g.      Whether Plaintiff and Class members could reasonably have discovered that Facebook shared their data with device makers without their authorization;

h.      Whether Plaintiff and Class members have a legally protected interest in their user data;

i.      Whether Plaintiff and Class members have a reasonable expectation of privacy in their user data;

j.      Whether Plaintiff and Class members own all the content and information they post on Facebook;

k.      Whether Facebook's conduct violated Plaintiff's and Class members' privacy and the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*;

l.      Whether Facebook intentionally intruded on Plaintiff's and Class members' solitude, seclusion or private affairs by sharing their user data with device makers without their knowledge or consent;

m.      Whether Facebook's act of sharing Plaintiff's and Class members' data to device makers interfered with their possessory interest in that data;

n.      Whether Facebook created a condition that was an obstruction to the free use of Plaintiff's and Class members' data so as to interfere with the comfortable enjoyment of that data;

o.      Whether Facebook's act of sharing Plaintiff's and Class members' data would reasonably annoy or disturb the ordinary person;

p.      Whether Plaintiff and Class members were deprived of income that Facebook generated through its unauthorized sharing of their data;

CLASS ACTION COMPLAINT

q.      Whether Plaintiff and Class members are entitled to equitable relief, including, but not limited to, injunctive relief, restitution, and disgorgement; and

r.      Whether Plaintiff and Class members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

47.      Plaintiff's claims are typical of the members of the Class as all members of the Class are similarly affected by Facebook's actionable conduct.  Facebook's conduct that gave rise to the claims of Plaintiff and members of the Class is the same for all members of the Class.

48.      Plaintiff will fairly and adequately protect the interests of the Class because she has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation.

49.      Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

50.      Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

51.      Facebook has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

### CLAIMS FOR RELIEF

### COUNT I
**Violation of the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.***

52.      Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

53.      Plaintiff brings this claim individually and on behalf of the members of the Class.

54.     The SCA allows a private right of action against "a person or entity providing an electronic communication service to the public" who "knowingly divulge(s) to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1); *see also* 18 U.S.C. § 2707(a).

55.     Facebook users transfer information, in the form of writing, images, and other data, via the Internet from various devices, including laptop computers and mobile cell phones, to Facebook's servers. This data constitutes "electronic communication" under the SCA. The SCA incorporates the definition of "electronic communication" set forth in the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* ("ECPA"). The ECPA defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce . . . ." 18 U.S.C. § 2510(12).

56.     Facebook is an electronic communication service provider covered by the SCA. An "electronic communication service" is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Facebook provides its users with the ability to send or receive electronic communications, including wall posts, and thus it constitutes an electronic communication service provider. *See Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 961 F. Supp. 2d 659, 667 (D.N.J. 2013).

57.     Facebook saves and archives data obtained from users on its servers indefinitely, and thus this data is in "electronic storage" for purposes of the SCA, which defines electronic storage as "any storage of such communication by an electronic communication for purposes of backup protection of such communication." 18 U.S.C. § 2510(17)(B).

58.     Facebook allows users to select privacy settings for their Facebook data. Access can be limited to users' Facebook friends, to particular groups or individuals, or to just the particular Facebook user. When users make Facebook data inaccessible to the general public, the data is considered private for purposes of the SCA.

59.     Facebook knowingly allowed device makers access to its users' data without their knowledge or consent.

60.     Facebook has violated 18 U.S.C. § 2702(a) because it knowingly divulged to device makers the contents of users' data while in Facebook's electronic storage.

61.     Facebook had actual knowledge of, and benefitted from, this practice, including by sustaining monetary profits.

62.     Because of Facebook's conduct described herein and its violations of 18 U.S.C. § 2702, Plaintiff and the Class have suffered actual injury in the form of dissemination of private data, costs of mitigation for the disclosure, loss of sales value of private data, and emotional distress.

63.     Plaintiff, on behalf of herself and the Class, seeks an order enjoining Facebook's conduct and is entitled to the greater of actual damages or statutory damages of $1,000 per violation, as well as disgorgement, punitive damages, attorneys' fees, and costs. 18 U.S.C. § 2707(c).

### COUNT II
### Violation of California Constitutional Right of Privacy (Const. Art. I § 1)

64.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

65.     Plaintiff brings this claim individually and on behalf of the members of the Class.

66.     Plaintiff and Class members have a legally protected privacy interest in their user data.

67.     Plaintiff and Class members had a reasonable expectation that Facebook maintained the privacy of this data because Facebook did not disclose that it was sharing such personal data, including relationship statuses and religious and political affiliations, which is necessarily of a highly sensitive and private nature, with device makers.

68.     Facebook's sharing of this data with device makers without Plaintiff's and Class members' knowledge or consent constitutes a serious violation of Plaintiff's and Class members' privacy interests.

69.     Facebook's violation of Plaintiff's and Class members' constitutional right to privacy caused Plaintiff and Class members damage from the disclosure itself and when Facebook unjustly profited from the sharing of Plaintiff's and Class members' information with device makers, thus depriving Plaintiff and Class members of any income that Facebook generated through its unauthorized data-sharing partnerships.

### COUNT III
### Intrusion Upon Seclusion

-17-

70.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

71.     Plaintiff brings this claim individually and on behalf of the members of the Class.

72.     Plaintiff and Class members have a reasonable expectation in the privacy of the information they post on Facebook.

73.     Facebook intentionally intruded on Plaintiff's and Class members' solitude, seclusion or private affairs by sharing user data, including relationship statuses and religious and political affiliations, with device makers without Plaintiff's and Class members' knowledge or consent.

74.     Upon information and belief, Facebook shared user data and that Plaintiff and Class members intended only to be shared with their friends or select categories of friends. This private data is not a matter of legitimate public concern.

75.     Facebook's intrusion was highly offensive to a reasonable person. Plaintiff and Class members did not permit Facebook to share their data with third-party device makers.

76.     Facebook's intrusion of seclusion caused Plaintiff and Class members damage from the disclosure itself and when Facebook unjustly profited from the sharing of Plaintiff's and Class members' information with device makers, thus depriving Plaintiff and Class members of any income that Facebook generated through its unauthorized data-sharing partnerships.

## COUNT IV
### Trespass To Personal Property

77.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

78.     Plaintiff brings this claim individually and on behalf of the members of the Class.

79.     Facebook represents to Plaintiff and Class members that they "own all of the content and information [they] post on Facebook."

80.     Facebook, intentionally and without consent, shared Plaintiff's and Class members' property, namely their user data, with device makers.

81.     Facebook's intentional and unauthorized sharing of Plaintiff's and Class members' property interfered with Plaintiff's and Class members' possessory interest in such property.

82.     Facebook's conduct caused Plaintiff and Class members damage from the disclosure itself and when Facebook unjustly profited from the sharing of Plaintiff's and Class members'

information with device makers, thus depriving Plaintiff and Class members of any income that Facebook generated through its unauthorized data-sharing partnerships.

### COUNT V
### Nuisance

83.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

84.     Plaintiff brings this claim individually and on behalf of the members of the Class.

85.     Facebook represents to Plaintiff and Class members that they "own all of the content and information [they] post on Facebook."

86.     Facebook, by sharing Plaintiff's and Class members' data with device makers, created a condition that was an obstruction to the free use of Plaintiff's and Class members' property, namely their user data, so as to interfere with the comfortable enjoyment of such property.

87.     Plaintiff and Class members did not consent to Facebook's sharing of their property with device makers.

88.     Facebook's intentional and unauthorized sharing of Plaintiff's and Class members' property with device makers would reasonably annoy or disturb the ordinary person.

89.     Facebook's conduct caused Plaintiff and Class members damage from the disclosure itself and when Facebook unjustly profited from the sharing of Plaintiff's and Class members' information with device makers, thus depriving Plaintiff and Class members of any income that Facebook generated through its unauthorized data-sharing partnerships.

90.     The seriousness of the harm suffered by Plaintiff and Class members outweighs any public benefit of Facebook's data-sharing partnerships.

### COUNT VI
### Violation of California's Consumer Legal Remedies Act ("CLRA")
### (Cal. Civ. Code § 1750 *et seq.*)

91.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

92.     Plaintiff brings this claim individually and on behalf of the members of the Class.

93.     Facebook is a "person" within the meaning of CLRA in that it is a corporation.

94.     Plaintiff and Class members are "consumers" within the meaning of CLRA in that they are individuals who seek or acquire services for personal, family, or household purposes.

95.     Facebook's conduct as alleged herein violates CLRA's ban of proscribed practices at Cal. Civ. Code § 1770(a) in that, *inter alia*, Facebook misrepresented its services by not disclosing that it shares users' data with device makers.

96.     In using various devices to access Facebook, based on Facebook's omissions and misrepresentations concerning data sharing to device makers, Plaintiff and Class members reasonably believed that their information was not being shared with third party device makers. If Plaintiff and Class members had known the truth about Facebook's omissions and representations about data partnerships with device makers, they would not have become Facebook users, or would have used Facebook on materially different terms.

97.     As a direct and proximate result of Facebook's misrepresentations and omissions, Plaintiff and Class members suffered injuries because: (a) Plaintiff and Class members suffered an invasion of their privacy as a result of Facebook sharing their data with device makers without their consent or knowledge; and (b) Plaintiff and Class members were deprived of any income Facebook generated through its unauthorized use or sale of data.

98.     Plaintiff and Class members seek equitable relief for Facebook's violation of CLRA, as permitted by statute. This includes injunctive relief to enjoin the wrongful practices alleged herein, and to take corrective action to remedy past conduct, including ending all data-sharing partnerships still in effect and having Facebook direct all device makers with Plaintiff's and Class members' data stored on their servers to delete that data.

99.     Plaintiff and Class members reserve the right to give written notice of this claim via certified mail per statute, and to thereafter seek damages via amended complaint.

## COUNT VII
### Violation of California's Unfair Competition Law ("UCL") – Unlawful Business Practice (Cal. Bus. & Prof. Code § 17200 *et seq.*)

100.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

101.    Plaintiff brings this claim individually and on behalf of the members of the Class.

102.    Plaintiff is a "person" within the meaning of the UCL.

103.    By reason of the conduct alleged herein, Facebook engaged in "unlawful business practices" within meaning of the UCL.

104.     Facebook did not disclose to users its data-sharing partnerships with device makers.

105.     Facebook misrepresented and omitted in its data use policy what data it could and did share with device makers.

106.     In using various devices to access Facebook, based on Facebook's omissions and misrepresentations concerning data sharing to device makers, Plaintiff and Class members reasonably believed that their information was not being shared with third party device makers. If Plaintiff and Class members had known the truth about Facebook's omissions and representations about data partnerships with device makers, they would not have become Facebook users, or would have used Facebook on materially different terms.

107.     Facebook improperly shared Plaintiff's and Class members' data with device makers without their consent or knowledge, or in excess of any authorization it might have obtained.

108.     Facebook's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, the Stored Communications Protection Act, 18 U.S.C. § 2701 *et seq.*, and thus constitute unlawful business practices under the UCL.

109.     Plaintiff and Class members suffered injury-in-fact and lost money or property as a result of Facebook's unlawful business practices because: (a) Plaintiff and Class members suffered an invasion of privacy as a result of Facebook sharing their data; and (b) Plaintiff and Class members were deprived of any income that Facebook generated through its unauthorized sharing or sale of their data.

110.     Because of Facebook's unlawful business practices, Plaintiff and the Class are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

**COUNT VIII**
**Violation of California's Unfair Competition Law ("UCL") – Unfair Business Practice**
**(Cal. Bus. & Prof. Code § 17200 *et seq.*)**

111.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

112.     Plaintiff brings this claim individually and on behalf of the members of the Class.

113.     Plaintiff is a "person" within the meaning of the UCL.

114.     By reason of the conduct alleged herein, Facebook engaged in "unfair business practices" within meaning of the UCL.

115.     Facebook improperly shared Plaintiff's and Class members' data with device makers without their consent or knowledge, or in excess of any authorization it might have obtained.

116.     Facebook did not disclose to users its data-sharing partnerships with device makers.

117.     Facebook misrepresented and omitted in its data use policy what data it could and did share with device makers.

118.     In using various devices to access Facebook, based on Facebook's omissions and misrepresentations concerning data sharing to device makers, Plaintiff and Class members reasonably believed that their information was not being shared with third party device makers. If Plaintiff and Class members had known the truth about Facebook's omissions and representations about data partnerships with device makers, they would not have become Facebook users, or would have used Facebook on materially different terms.

119.     Plaintiff and Class members had no way of reasonably knowing that Facebook was sharing their data with device makers without authorization. They could not have reasonably avoided the injury each of them suffered.

120.     There is no benefit to consumers or competition from deceptively sharing Plaintiff's and Class members' data with third-party device makers.

121.     The gravity of the consequences of Facebook's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace. Such conduct is immoral, unethical, unscrupulous, offends established public policy, and is substantially injurious to Plaintiff and other Class members.

122.     Plaintiff and Class members suffered injury-in-fact and lost money or property as a result of Facebook's unfair business practices because: (a) Plaintiff and Class members suffered an invasion of privacy as a result of Facebook sharing their data; and (b) Plaintiff and Class members were deprived of any income that Facebook generated through its unauthorized sharing or sale of their data.

123.     Because of Facebook's unfair business practices, Plaintiff and the Class are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

**COUNT IX**
**Violation of California's Unfair Competition Law ("UCL") – Fraudulent Business Practice**

**(Cal. Bus. & Prof. Code § 17200 *et seq.*)**

124.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

125.    Plaintiff brings this claim individually and on behalf of the members of the Class.

126.    Plaintiff is a "person" within the meaning of the UCL.

127.    By reason of the conduct alleged herein, Facebook engaged in "fraudulent business practices" within meaning of the UCL.

128.    Facebook did not disclose to users its data-sharing partnerships with device makers.

129.    Facebook falsely and knowingly represented to Plaintiff and Class members that they had control over who had access to their data and that it would not disclose their data without consent. Facebook engaged in fraudulent business practices by representing that Plaintiff and Class members had control over access to their data and that Facebook would not disclose Plaintiff's and Class members' data to third parties without consent.

130.    Facebook's statements that it would not disclose of Plaintiff's and Class members' data were false because Facebook knowingly and intentionally disclosed Plaintiff's and Class members' private data for its own advantage and commercial profit, without permission from Plaintiff and Class members.

131.    Facebook's acts, omissions, and misrepresentations about data use were likely to deceive reasonable consumers. Facebook led Plaintiff and Class members to believe that it was not sharing their data with third parties without their consent, when it was in fact doing so. Said acts are fraudulent business practices.

132.    In using various devices to access Facebook, based on Facebook's omissions and misrepresentations concerning data sharing to device makers, Plaintiff and Class members reasonably believed that their information was not being shared with third party device makers. If Plaintiff and Class members had known the truth about Facebook's omissions and representations about data partnerships with device makers, they would not have become Facebook users, or would have used Facebook on materially different terms.

-23-

CLASS ACTION COMPLAINT

133.     Plaintiff and Class members had no way of reasonably knowing that Facebook sharing their data with device makers without their consent. They could not have reasonably avoided the injury each of them suffered.

134.     There is no benefit to consumers or competition from fraudulently sharing Plaintiff's and Class members' data with third-party device makers.

135.     The gravity of the consequences of Facebook's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace. Such conduct is immoral, unethical, unscrupulous, offends established public policy, and is substantially injurious to Plaintiff and other Class members

136.     Plaintiff and Class members suffered injuries-in-fact and lost money or property as a result of Facebook's fraudulent business practices because: (a) Plaintiff and Class members suffered an invasion of privacy as a result of Facebook sharing their data; and (b) Plaintiff and Class members were deprived of any income that Facebook generated through its unauthorized sharing or sale of their data.

137.     Because of Facebook's fraudulent business practices, Plaintiff and the Class are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

1.     The greater of their actual damages or statutory damages of $1,000 per SCA violation, as well as disgorgement, punitive damages, attorneys' fees, and costs;

2.     Actual and punitive damages arising from Facebook's wrongful and illegal conduct;

3.     Restitution from Facebook for its unjust enrichment as a result of the conduct described herein;

4.     A permanent injunction directing Facebook to end all data-sharing partnerships with device makers and prohibiting Facebook from sharing user data with third-party device markers without users' prior express consent;

5.     Attorney's fees;

6.     Litigation expenses and costs of the instant suit; and

CLASS ACTION COMPLAINT

1    7.    Such other or further relief as the Court deems proper.

2                                **<u>JURY DEMAND</u>**

3    Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

4

5    Dated: August 30, 2018                    Respectfully submitted,

6                                               _/s/ Sabita J. Soneji_
                                               SABITA J. SONEJI
7                                              TYCKO & ZAVAREEI LLP
                                               483 Ninth St., Suite 200
8                                              Oakland, CA 94607
                                               Telephone: (510) 254-6808
9                                              Facsimile: (202) 973-0950
                                               Email: ssoneji@tzlegal.com
10

11

12                                             *Counsel for Plaintiff Rankins*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT